Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LIZBETH MOLINA<br><br>Apelante<br><br>v.<br><br>CORPORACIÓN DEL CENTRO CARDIOVASCULAR DEL PUERTO RICO Y DEL CARIBE<br><br>Apelada | TA2026AP00460 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2025CV08133<br><br>Sobre: Sentencia Declaratoria, Violación de Derechos, Derecho Administrativo |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 12 de junio de 2026.

Comparece la apelante, Lizbeth Molina, mediante el recurso de epígrafe y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de marzo de 2026. Mediante el referido dictamen, el foro primario desestimó la demanda de epígrafe sin perjuicio, tras concluir que carecía de jurisdicción sobre la materia.

Por los fundamentos que se exponen a continuación, se confirma la *Sentencia* apelada.

**I**

El 10 de septiembre de 2025, Lizbeth Molina (Molina o apelante) instó una *Demanda* sobre sentencia declaratoria.[1] En esta, Molina alegó ser empleada de carrera en la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe (Corporación o parte

---

[1] Entrada núm. 1 del caso núm. SJ2025CV08133 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

apelada), donde actualmente se desempeña como Oficial de Cumplimiento Corporativo. En esencia, alegó que, el 29 de abril de 2025, la Corporación le entregó una carta en la que le notificó que su plaza había sido reclasificada y que el cambio de clasificación constituyó un descenso.[2] Como remedio, solicitó una sentencia declaratoria en la que se establezca que el Plan de Clasificación y Retribución de la Corporación es nulo. Asimismo, requirió del foro *a quo* que le ordene a la Corporación clasificarle correctamente y compensarle adecuadamente.

Luego de expedido y diligenciado el emplazamiento,[3] el 24 de octubre de 2025, la Corporación presentó una *Contestación a Demanda*.[4] En lo pertinente, adujo que, si la apelante se encontraba en desacuerdo con la determinación tomada como resultado de la implementación del nuevo *Plan de Clasificación y Retribución del Servicio de Carrera (Unionado y No unionado)*, correspondía que presentara una solicitud de revisión administrativa ante el Director Ejecutivo de la Corporación. Asimismo, sostuvo que, en caso de que la adjudicación del Director Ejecutivo le resultase adversa, procedía que esta apelara ante el Tribunal de Primera Instancia.

Así las cosas, el 26 de octubre de 2025, el foro primario emitió una *Orden*, que notificó al día siguiente.[5] Mediante esta, le concedió a la Corporación un término de quince (15) días para presentar un escrito en el que detallara el fundamento legal en el que se basó para afirmar en su *Contestación a Demanda*, que el recurso de revisión judicial que la apelante debía presentar era ante el Tribunal de Primera Instancia.

Tras solicitar y obtener una prórroga de cuatro (4) días, el 21 de noviembre de 2025, la Corporación presentó una *Moción en*

---

[2] Véase, *Demanda*, alegaciones núm. 4 y 15. Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC.
[3] Entradas núm. 3 y 4 del caso núm. SJ2025CV08133 del SUMAC.
[4] Entrada núm. 8 del caso núm. SJ2025CV08133 del SUMAC.
[5] Entrada núm. 9 del caso núm. SJ2025CV08133 del SUMAC.

*cumplimiento de orden.*[6] Esencialmente, la parte apelada señaló que su afirmación emana de los cuerpos normativos siguientes: 1) *Procedimiento Interno para Solicitar Revisión Administrativa por la Implementación del Plan de Clasificación y Retribución de los Empleados Unionados y No Unionados del Servicio de Carrera;* 2) *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia;* y 3) *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU).[7]

En particular, la parte apelada razonó que, si bien la Corporación es una corporación pública, esta no satisface la definición de "agencia" para fines de la LPAU,[8] debido a que no tiene autoridad en ley para reglamentar o investigar, ni tampoco para adjudicar, emitir licencias, permisos, certificados, acreditaciones, privilegios o franquicias. Por tanto, rechazó que el recurso de revisión judicial para recurrir de las determinaciones de su Director Ejecutivo, deba ser presentado ante el Tribunal de Apelaciones. En consecuencia, y de conformidad con las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia,* sostuvo que correspondía presentar el recurso ante el foro *a quo.*

Por su parte, en cumplimiento con una orden del foro primario, el 27 de enero de 2026, Molina reaccionó a la argumentación formulada por la Corporación, mediante una *Moción en cumplimiento de orden.*[9] En virtud del escrito presentado, la apelante cuestionó lo argumentado por la Corporación en su respectiva *Moción en cumplimiento de orden.* En particular, planteó que la parte apelada obvió los procedimientos establecidos en sus

---

[6] Entrada núm. 14 del caso núm. SJ2025CV08133 del SUMAC.
[7] Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601, *et seq.*
[8] Véase, Sección 1.3(a) de la Ley Núm. 38-2017, 3 LPRA sec. 9603.
[9] Entrada núm. 20 del caso núm. SJ2025CV08133 del SUMAC.

Reglamentos Núm. 9253 y 9254;[10] ambos promulgados por la Corporación el 21 de enero de 2021. De este modo, la apelante razonó que el Reglamento Núm. 9253 codifica un procedimiento administrativo adjudicativo aplicable a impugnaciones como la suya, el cual consiste en designar un oficial examinador o juez administrativo, cuya determinación debe ser avalada por el Director Ejecutivo o Secretario de la Junta de Directores y el cual luego es revisable ante el Tribunal de Apelaciones.

De este modo, reiteró que su intención al presentar la *Demanda* de epígrafe fue solicitar una sentencia declaratoria, a los fines de plantear que la Corporación observó un proceso contrario a su reglamentación, al no permitirle apelar ante la Junta de Directores. Por el contrario, sostuvo que la parte apelada le privó de sus derechos como empleada no unionada, al instruirle de manera errónea a solicitar revisión ante el Tribunal de Primera Instancia.

Luego de evaluar la postura de ambas partes, el 20 de marzo de 2026, el foro primario emitió y notificó la *Sentencia* apelada.[11] Mediante el dictamen apelado, el foro primario desestimó sin perjuicio la demanda de epígrafe, tras concluir que carecía de jurisdicción sobre la materia para conceder los remedios solicitados por Molina. En particular, razonó que la revisión judicial de una determinación final emitida por la Corporación debe presentarse en el Tribunal de Apelaciones, en lugar de ante el Tribunal de Primera Instancia. Asimismo, le concedió a la Corporación un término de diez (10) días para notificarle a Molina nuevamente la determinación final emitida el 6 de junio de 2025; esta vez, con la advertencia correcta respecto a que el recurso de revisión judicial procedente es ante el Tribunal de Apelaciones.

---

[10] El primero se conoce como *Reglamento para los procedimientos administrativos de adjudicación de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, mientras que el segundo es el *Reglamento para la administración de los recursos humanos y relaciones laborales*.
[11] Entrada núm. 24 del caso núm. SJ2025CV08133 del SUMAC.

En desacuerdo, el 6 de abril de 2026, Molina presentó una *Moción de reconsideración.*[12] Tras evaluar dicha solicitud, el foro primario la declaró No Ha Lugar, mediante una *Resolución* emitida y notificada el 7 de abril de 2026.[13]

Todavía inconforme, el 6 de mayo de 2026, Molina acudió ante este Foro mediante el recurso de epígrafe y adujo que el foro *a quo* cometió el siguiente error:

> Erró el Tribunal de Primera Instancia al concluir que carecía de jurisdicción sobre la materia y desestimar la demanda de la apelante aun cuando esta incluye una solicitud de sentencia declaratoria.

Tras una evaluación preliminar del recurso de epígrafe, el 7 de mayo de 2026, emitimos una *Resolución,* que notificamos al día siguiente. En esta, dispusimos que la Corporación contaba con el término reglamentario de treinta (30) días para presentar su alegato.[14]

En cumplimiento con el referido término, el 5 de junio de 2026 la Corporación presentó un escrito que tituló *Alegato de la parte apelada,* en el que manifestó que procede confirmar el dictamen apelado. Razonó que, de conformidad con el Artículo 4.2 de la Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672,[15] las revisiones judiciales deben presentarse ante el Tribunal de Apelaciones, dentro de treinta (30) días, contados a partir de la fecha de archivo en autos de copia de la notificación de la orden o resolución final recurrida.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del asunto ante nuestra consideración.

---

[12] Entrada núm. 26 del caso núm. SJ2025CV08133 del SUMAC.

[13] Entrada núm. 27 del caso núm. SJ2025CV08133 del SUMAC.

[14] Véase, Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22. *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, págs. 45-46, 215 DPR ___ (2025).

[15] Conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.*

## II

## A

La jurisdicción es el poder o autoridad que posee un tribunal para considerar y decidir un caso o controversia. *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. ELA*, 211 DPR 521, 529 (2023); *MCS Advantage, Inc. v. Fossas Blanco*, 211 DPR 135, 144 (2023); *Cobra Acquisitions, LLC. v. Municipio de Yabucoa* 210 DPR 384, 394 (2022). Nuestro Tribunal Supremo ha reiterado que los tribunales debemos ser fieles guardianes de nuestra jurisdicción y en que no tenemos discreción para asumir jurisdicción allí donde no la hay. Es decir, la jurisdicción incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Management Group, Inc. v. Oriental Bank,* 204 DPR 374, 386 (2020); *S.L.G. Szendrey-Ramos v. F. Castillo,* 169 DPR 873, 882 (2007). En consecuencia, les corresponde a los foros adjudicativos examinar su propia jurisdicción. *S.L.G. Szendrey-Ramos v. F. Castillo.,* supra, pág. 883.

La falta de jurisdicción sobre la materia tiene las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. S.L.G. Solá-Moreno v. Bengoa Becerra,* 182 DPR 675, 682 (2011).

En fin, la norma general es que, en Puerto Rico, los tribunales son foros de jurisdicción general, lo que significan que pueden adjudicar todo tipo de controversia que se traiga ante su consideración. *MCS Advantage, Inc. v. Fossas Blanco*, supra, págs.

144-145. Ello, salvo que carezcan de jurisdicción sobre la materia. *Íd*. De este modo, cuando el tribunal carece de jurisdicción, "procede la inmediata desestimación" de la causa de acción. *S.L.G. Szendrey-Ramos v. F. Castillo,* supra, pág. 883.

**B**

La doctrina de agotamiento de remedios administrativos se encuentra codificada en la sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672, la cual dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia **y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo** correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. [...].

(Negrillas suplidas).

Dicha doctrina constituye una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento adecuado. *Igartúa de la Rosa, et als. v. A.D.T.*, 147 DPR 318, 331 (1998). Su objetivo principal es evitar una intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo. *Delgado Rodríguez v. Nazario de Ferrer*, 121 DPR 347, 355 (1988).

Así, pues, la doctrina de agotamiento de remedios administrativos constituye un requisito jurisdiccional que no debe ser soslayado, a menos que se configure alguna de las limitadas excepciones que, al amparo de nuestro ordenamiento jurídico, justifican eludir el trámite administrativo. *Igartúa de la Rosa v.*

*A.D.T.*, supra, pág. 331. De manera cónsona, la sección 4.3 de la LPAU establece las excepciones a la referida doctrina:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.

3 LPRA sec. 9673.

**C**

La Corporación del Centro Cardiovascular de Puerto Rico existe en virtud de la Ley Núm. 51 de 30 de junio de 1986, según enmendada, 24 LPRA sec. 343 *et seq.*[16] Según su artículo 2, es una corporación pública que funciona "como una entidad independiente y separada de cualquier otra agencia o instrumentalidad del Gobierno del Estado Libre Asociado de Puerto Rico". 24 LPRA sec. 343a. De conformidad con el referido artículo, la dirección de la Corporación está a cargo de una Junta de Directores. *Íd.*

En esencia, la Corporación es "el organismo responsable de formular o ejecutar la política pública en relación con la planificación, organización, operación y administración de los servicios cardiovasculares a ser rendidos en Puerto Rico". Artículo 3, Ley Núm. 51, 24 LPRA sec. 343b. Véase, *Perfect Cleaning v. Cardiovascular*, 162 DPR 745, 752-753 (2004). En lo pertinente, entre sus poderes y funciones, se encuentra: [...] (j) [f]ormular, **adoptar, enmendar y derogar reglas y reglamentos** necesarios para su funcionamiento. Artículo 3(f), Ley Núm. 51, 24 LPRA sec. 343b(f). (Negrillas suplidas).

---

[16] Conocida como *Ley de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe.*

De conformidad con la facultad de promulgar reglamentos que posee en virtud de la Ley Núm. 51, el 21 de enero de 2021, la Corporación aprobó los Reglamentos Núm. 9253 y 9254.[17] Lo relativo a la clasificación y evaluación de puestos en la Corporación, se rige por el Artículo VIII del Reglamento Núm. 9254. De este modo, la sección 8.1 dispone que el establecimiento, implantación y administración de los planes de clasificación y evaluación de puestos debe realizarse de conformidad con el proceso dispuesto en dicho reglamento.

De otra parte, en cuanto al agotamiento de trámite administrativo que el Reglamento Núm. 9254 contempla para recurrir de dictámenes sobre la clasificación o reclasificación de un puesto, la sección 8.8 establece que "el empleado tendrá derecho a apelar por escrito ante la Junta de Directores dentro del término de treinta (30) días a partir de la fecha de la notificación de la acción tomada". Respecto a este tipo de proceso, el Artículo XVIII codifica la designación de oficiales examinadores y establece en su sección 18.1(c) que el oficial examinador tiene la "facultad de resolver y adjudicar las quejas, querellas, reclamaciones **o apelaciones** que radiquen los empleados cubiertos por este Reglamento [...]". (Negrillas suplidas).

De otra parte, el Reglamento Núm. 9253 regula los procesos adjudicativos ante la Corporación. En lo pertinente, define "adjudicación" como el "[p]ronunciamiento mediante el cual la Corporación determine los derechos, obligaciones o privilegio que corresponden a una parte". Sección 9.1, Reglamento Núm. 9253.

Así, de forma cónsona con lo dispuesto en el Reglamento Núm. 9254, el Artículo 16 del Reglamento Núm. 9253 provee un

---

[17] A estos reglamentos se les conoce como *Reglamento para los procedimientos administrativos de adjudicación de la Corporación del Centro Cardiovascular de Puerto Rico y del Caribe* y *Reglamento para la administración de los recursos humanos y relaciones laborales,* respectivamente.

mecanismo para designar "funcionarios de adjudicación"; entiéndase, oficiales examinadores o jueces administrativos. Asimismo, establece que, si se designa un oficial examinador, este "someterá un informe al Director Ejecutivo o a la Junta de Directores, según proceda, que contenga determinaciones de hecho y conclusiones de Derecho y su recomendación en cuanto a la adjudicación". En estos casos, "[l]a orden o resolución deberá ser firmada por el Director Ejecutivo, o Secretario de la Junta de Directores, según proceda". De otra parte, en aquellos casos en que se designe un juez administrativo, este tendrá a su cargo la adjudicación del caso y la resolución que emita deberá cumplir con las salvaguardas de la LPAU.

Por último, el Artículo 31 del Reglamento Núm. 9253 codifica el derecho que le asiste a la parte que resulte adversamente afectada luego de un proceso adjudicativo ante la Corporación, a solicitar reconsideración ante dicho ente, de conformidad con los términos dispuestos en la sección 31.1. Finalmente, el Artículo 37 dispone lo siguiente:

> **Toda parte adversamente afectada por una orden o resolución final de la Corporación y que haya agotado todos los remedios administrativos provistos por la Corporación podrá presentar un Recurso de Revisión ante el Tribunal de Apelaciones**, dentro de un término de treinta (30) días, contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la Corporación o a partir de la fecha aplicable de las dispuestas en el Artículo 31, de este Reglamento, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

(Negrillas suplidas).

A la luz de la normativa antes expuesta, procedemos a disponer del caso ante nuestra consideración.

### III

Mediante el único señalamiento de error formulado, Molina adujo que el foro *a quo* erró al concluir que carecía de jurisdicción sobre la materia y desestimar su demanda, aun cuando esta incluye

una solicitud de sentencia declaratoria. No se cometió el error señalado.

En primer lugar, es preciso subrayar que Molina acompañó como anejo a la *Demanda* de epígrafe, la carta que recibió de la parte apelada con fecha de 7 de abril de 2025,[18] y en cuyos pronunciamientos se basó para incoar el presente pleito de sentencia declaratoria. Este Foro examinó el referido documento. Tras el mencionado análisis pudimos constatar que, en virtud de dicha misiva, la Corporación le notificó a la apelante que, según el nuevo Plan de Clasificación y Retribución de servicio de carrera, la clasificación del puesto que ocupa como Oficial de Cumplimiento Corporativo no conllevaría un ajuste de salario.[19]

Acto seguido, la carta en cuestión contiene una serie de advertencias sobre los remedios a los que la apelante puede acudir, de no encontrarse conforme con los términos de la clasificación de su puesto. Mediante estas, se le instruye sobre su derecho a "presentar *una solicitud escrita* de revisión administrativa ante el Director Ejecutivo, dentro del término de treinta (30) días calendario [...]".[20] (Bastardillas en el texto original). Asimismo, se le apercibe que la autoridad nominadora tendría un término de sesenta (60) días para notificarle la determinación tomada. Asimismo, que, de esta resultarle adversa, como empleada no unionada, tendría un término de treinta (30) días para recurrir mediante apelación al Tribunal de Primera Instancia.

De conformidad con el procedimiento detallado en las advertencias de la carta, el 14 de mayo de 2025, Molina presentó

---

[18] Según la alegación núm. 4, la Corporación le entregó esta carta a Molina el 29 de abril de 2025. Véase, *Demanda*, pág. 1. Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC.

[19] *Carta de Notificación Implantación del Plan de Clasificación y Retribución*, pág. 2. Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC. (Anejo 1).

[20] *Carta de Notificación Implantación del Plan de Clasificación y Retribución*, pág. 3. Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC. (Anejo 1).

una apelación ante el Director Ejecutivo de la Corporación.[21] Tras evaluarla, el 6 de junio de 2025, el Director Ejecutivo le cursó a la apelante una determinación, que le fue notificada el 11 de agosto de 2025. En esta, la Corporación le informó a Molina que su solicitud fue evaluada por un Comité Revisor, el cual recomendó rechazar la apelación. En las advertencias, a Molina se le apercibió que, en caso de no estar de acuerdo con la determinación, tiene derecho a "recurrir en revisión administrativa ante el Tribunal de Primera Instancia, Sala de San Juan, dentro del término jurisdiccional de treinta (30) días [...]".[22]

Cabe reseñar que, en la *Sentencia* apelada, el foro primario rechazó expresamente el planteamiento previamente esbozado por la Corporación, a los fines de que no es un ente que satisfaga las características de una "agencia" administrativa. En particular, el foro *a quo* expresó que "la determinación impugnada constituye una **determinación final administrativa** emitida por una corporación pública con facultades reglamentarias".[23] (Negrillas en el texto original).

Asimismo, el foro primario manifestó que "aunque la parte demandante invoca la figura de sentencia declaratoria, en realidad, el remedio solicitado persigue en esencia la revisión de una determinación administrativa final".[24] En consecuencia, concluyó que "carece de jurisdicción sobre la materia, ya que la revisión de la determinación final emitida el 6 de junio de 2025 corresponde al Tribunal de Apelaciones".[25] Asimismo, le ordenó a la Corporación notificar nuevamente la determinación emitida el 6 de junio de 2025,

---

[21] Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC. (Anejo 2).

[22] *Determinación Final de Revisión Administrativa* [...], pág. 2. Entrada núm. 1 del caso núm. SJ2025CV08133 del SUMAC. (Anejo 3).

[23] *Sentencia* apelada, pág. 10. Entrada núm. 24 del caso núm. SJ2025CV08133 del SUMAC.

[24] *Sentencia* apelada, pág. 11. Entrada núm. 24 del caso núm. SJ2025CV08133 del SUMAC.

[25] *Sentencia* apelada, pág. 12. Entrada núm. 24 del caso núm. SJ2025CV08133 del SUMAC.

"advirtiendo correctamente que el recurso de revisión procede ante el Tribunal de Apelaciones [...]".[26]

Luego de evaluar el recurso de epígrafe, a la luz de la totalidad del expediente, y en consideración a la reglamentación citada en nuestra exposición del derecho aplicable, concluimos que el foro *a quo*, en efecto, carecía de jurisdicción sobre la materia. Sin lugar a dudas, resalta el hecho de que la Corporación omitiera seguir los procesos que surgen de su propia reglamentación aplicable. Asimismo, que impartiera advertencias inoficiosas al instruir erróneamente a la apelante para que recurriera ante el Tribunal de Primera Instancia de un dictamen administrativo que le resultó adverso, cuando no hay controversia respecto a que el foro con jurisdicción es el Tribunal de Apelaciones.

En virtud de lo anterior, actuó correctamente el foro *a quo* al desestimar la *Demanda* de epígrafe y ordenarle a la parte apelada emitir una nueva determinación con advertencias correctas, que se ajusten a la reglamentación aplicable. En consecuencia, procede confirmar el dictamen apelado.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[26] *Sentencia* apelada, pág. 12. Entrada núm. 24 del caso núm. SJ2025CV08133 del SUMAC.